UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LADELL D. MADLOCK,

Plaintiff,

v. Case No. 25-CV-1482

CHRISTINA STEVENS,

Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Ladell D. Madlock is currently incarcerated at the Wisconsin Secure Program Facility and representing himself in this 42 U.S.C. § 1983 case. He is proceeding on an Eighth Amendment excessive force claim and a state law negligence claim against Defendant Christina Stevens based on allegations that Defendant slammed the trap of Plaintiff's cell on his finger. This matter comes before the Court on Defendant's motion for summary judgment. For the following reasons, Defendant's motion will be granted and the case will be dismissed.

**BACKGROUND**

At all times relevant to this case, Plaintiff was incarcerated at Wisconsin Resource Center. (ECF No. 36, ¶ 1.) Defendant was employed by the Wisconsin Department of Health Services as a Psychiatric Care Technician Advanced (PCT-A). (*Id.* ¶ 2.) On March 16, 2025, Defendant worked her assigned post in the high management unit, S-11. (*Id.* ¶ 3.) The high management unit houses inmates on individualized care plans, administrative confinement, controlled separation, disciplinary separation, observation status, and temporary lockup status. (*Id.* ¶ 4.)

When Defendant and PCT-A Jamie Formiller arrived on the unit at 6:00 a.m., Plaintiff yelled that he observed staff acting racist. (ECF No. 40, ¶ 2.) Plaintiff asserts that Defendant said,

"Shut up, it's too early to be yelling that bullshit." (*Id.* ¶ 7.) Plaintiff ignored Defendant's statement and continued yelling that staff members at Wisconsin Resource Center are racist. (*Id.* ¶ 8.) At approximately 6:45 a.m., Defendant and PCT-A Formiller passed out breakfast trays in the unit. (ECF No. 36, ¶ 5.) Plaintiff had a lower trap/back of cell security restriction, so Defendant looked into his cell to make sure he was at the back of the cell. (*Id.* ¶ 6.)

The video footage of the incident shows Defendant unlock the lower trap, place Plaintiff's food tray on the trap, and step back so Plaintiff could grab the tray. (ECF No. 28-1 at 0:23–37; *see also* ECF No. 36, ¶ 6.) Plaintiff then came up to the cell door and picked up his tray. (ECF No. 28-1 at 0:39; *see also* ECF No. 36, ¶ 7.) After Plaintiff slid the tray through the trap, Defendant attempted to close the trap door with her foot. (ECF No. 28-1 at 0:40.) Defendant looked down toward the trap, then four seconds later, attempted to tap the trap closed with her foot. (*Id.* at 0:41–46.) Two seconds later, Defendant completely closed the trap with her foot. (*Id.* at 0:48.)

According to Defendant, she watched the lower trap as Plaintiff grabbed his tray to determine when she could close the trap. (ECF No. 27, ¶ 8.) As she closed the trap with her foot, Plaintiff placed his hand in the trap. (*Id.* ¶ 9.) Defendant stopped closing the trap as soon as she saw Plaintiff place his hand in the way and waited until Plaintiff removed his hand before closing the trap with her foot. (*Id.* ¶ 10.)

Plaintiff asserts that his hand was in the trap door to grab his food tray when Defendant kicked the trap shut on his left middle finger. (ECF No. 40, ¶ 5.) He withdrew his finger out of the trap after it was kicked all the way shut. (*Id.* ¶ 4.)

After Defendant closed the trap, Plaintiff stated, "My finger, why would you do that?" (*Id.* ¶ 5.) Plaintiff asserts that Defendant responded, "You shouldn't have had your hand in the trap, how's that for racism," and that she did not look at his injury. (ECF No. 37, ¶ 5.) Defendant

disputes that she made this comment and that she did not look at Plaintiff's finger. (ECF No. 40, ¶ 5.)

Defendant informed the Health Services Unit (HSU) as well as Captain Ryan Pinkall and PCS Michael Zificsak about the incident. (ECF No. 36, ¶ 13.) Plaintiff was assessed by HSU staff. (*Id.* ¶ 14.) HSU staff observed some swelling and noted a possible deformity to the top knuckle and a break in the skin. (*Id.* ¶ 15; ECF No. 29-1 at 1.) HSU staff cleansed Plaintiff's wound and applied a band-aid. (ECF No. 36, ¶ 19; ECF No. 29-1 at 1.)

Later that day, Plaintiff presented to Aurora Health Care. Staff noted there was no significant deformity to the left middle finger, that Plaintiff was able to range the finger, that Plaintiff had a small superficial laceration to the dorsal aspect of the left finger, and that there was tenderness along the finger. (ECF No. 36, ¶ 16; ECF No. 29-1 at 4.) Plaintiff's finger was not fractured. (ECF No. 36, ¶ 17.) No pain medication was prescribed, but Plaintiff was instructed to take ibuprofen and Tylenol for pain. (*Id.*)

## LEGAL STANDARD

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper

documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.*

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a video recording exists, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Id.* at 378–81. If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ." Fed. R. Civ. P. 56(a).

**ANALYSIS**

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "But not every malevolent touch by a security officer implicates the Constitution." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley*, 475 U.S. at 327). If the force used is more than *de minimis*, the Court considers whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 7.

Plaintiff asserts that Defendant deliberately used excessive force to close the trap on his finger. Even if the use of force was deliberate and perhaps unnecessary, the evidence before the Court demonstrates that the force used by Defendant was *de minimis* and not "repugnant to the

conscious of mankind." *Id.* at 10. Defendant had a legitimate, penological reason to close the trap. *See Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001); *see also Jenkins v. Wiegel*, No. 13-cv-285, 2014 WL 4265838, at *3 (W.D. Wis. Aug. 28, 2014) (noting that courts have recognized an open cell trap poses a security risk). In closing the trap, Defendant applied only enough force to cause minor injuries to Plaintiff's hand. "While a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation, and a minor injury supports the conclusion that the incident was at most a *de minimis* use of force not intended to cause pain or injury to the inmate." *Outlaw*, 259 F.3d at 840 (cleaned up).

Plaintiff suffered a small superficial laceration to his left middle finger. HSU staff cleaned the wound and gave Plaintiff a band-aid, and a doctor at the hospital instructed him to take ibuprofen and Tylenol for pain. No reasonable jury could conclude that Defendant subjected Plaintiff to excessive force. *See id.* at 839 (finding no Eighth Amendment violation when correctional officer closing inmate's hand in cuff port of cell door caused superficial injury to inmate's hand). Therefore, Defendant is entitled to summary judgment on this basis. Defendant also argues that she is entitled to qualified immunity, but because the Court is granting summary judgment in her favor on the merits, it need not address that argument.

Finally, the Court will relinquish jurisdiction over Plaintiff's state law claim because it has resolved his federal claims. *See* 28 U.S.C. § 1367(c)(3); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 905 (7th Cir. 2007) (noting that district courts are expressly authorized "to dismiss a supplemental claim when the federal claims have dropped out of the case"). Plaintiff's state law claim will be dismissed without prejudice so that he may pursue it in state court, if he so chooses.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (ECF No. 26) is **GRANTED**. Plaintiff's federal claim is dismissed with prejudice, and his state law claim is dismissed without prejudice. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin on October 14, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.